# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMES KRELL and MARCIA KRELL, husband and wife and their marital community, | No. 54281-1-II |
| Appellants, | |
| v. | |
| PORT LUDLOW TOWNHOME ASSOCIATION (PLTHA), an entity formed under the laws of the State of Washington; KIRK BOYS and KIM BOYS, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

VELJACIC, J. — James and Marcia Krell (the Krells) live in a townhome adjacent to Kirk and Kim Boys (the Boys) in a planned development. The Krells possess an easement over part of the Boys's property for ingress and egress through a courtyard. The Port Ludlow Townhome Association (the PLTHA), which manages the townhomes, built a gate that spanned a gap in a fence surrounding the courtyard. The Krells filed a complaint against the Boys and the PLTHA to quiet title and for an injunction. The Boys and the PLTHA moved for summary judgment. In this interlocutory appeal, the Krells appeal the trial court's order granting the Boys's and the PLTHA's motions for summary judgment. The order dismissed the Boys from this action, and dismissed some of the Krells's claims against the PLTHA.

The Krells argue that the trial court erred in dismissing their quiet title cause of action based on the Boys's and the PLTHA's concession to the existence of the easement; the trial court erred in dismissing their declaratory judgment action against the Boys because a genuine issue of material fact remains as to whether the Boys's omissions in opposing the PLTHA's installation of the gate unreasonably interferes with their easement rights; and the trial court erred in awarding attorney fees and costs to the Boys under the declaration of covenants, conditions, and restrictions. The Krells and the Boys both request attorney fees on appeal.

We hold that the trial court did not err in dismissing the Krells's quiet title claim against the Boys and the PLTHA. However, we hold that the trial court erred in dismissing the Boys because they are necessary parties to resolve the Krells's declaratory judgment action, that the Boys owed the Krells an affirmative duty to facilitate the use of their easement, and there are issues of material fact remaining as to whether the Boys, by permitting the PLTHA to install a gate on their property and within the Krells's easement, violated their duty against unreasonably burdening the easement. We also hold that the trial court erred in awarding the Boys's attorney fees and costs. And finally, we deny both parties' request for attorney fees on appeal. Accordingly, we affirm the trial court's dismissal of the quiet title action, reverse the trial court's dismissal of the declaratory judgment action against the Boys and its dismissal of the Boys as parties, reverse the trial court's award of attorney fees, deny attorney fees on appeal, and remand for further proceedings.

FACTS

I.    FACTUAL BACKGROUND

Port Ludlow Village is a planned community in Port Ludlow, Washington. The Village has 25 townhomes, a single-family residence, and a hotel. The Village is governed by the Ludlow Bay Village Association, which is known as the "Master Association." The townhomes are also governed by the PLTHA, a separate homeowner's association. Both the Master Association and the PLTHA are governed by a declaration of covenants, conditions, and restrictions (Declaration).[1]

The townhomes in the Village are contained in six separate buildings. Relevant here, two of the buildings front directly onto a portion of Heron Road, which is the primary access point for the townhomes and hotel. Each of those two buildings has three courtyards, which totals six courtyards. Several townhome courtyards are shared by two owners. Each contains a pathway that leads into the courtyard and then splits to access each townhome's front door. The manner in which the underlying parcels were plotted required one townhome to own the courtyard while the other was granted an access easement. Five of the six courtyards had access gates installed when the buildings were constructed.

The Krells and the Boys are neighboring townhome owners in the Village. The Krells live on 36 Heron Road, which is referred to as parcel TH-18. The Boys live on 34 Heron Road, which is referred to as parcel TH-17. The Krells and the Boys share a courtyard as described above. The parties do not dispute that the Boys own the courtyard at issue. The parties also do not dispute that section 14.3 of the Declaration establishes an access easement for the benefit of the Krells and

---

[1] The parties use the term CC&Rs throughout their briefing. They are referencing the Declaration, which is the term we use herein.

their invitees.[2]  The courtyard at 34 and 36 Heron Road was the only townhome which did not have an access gate.

II.    THE BOYS'S AND THE PLTHA'S APPLICATION TO INSTALL A GATE

On July 6, 2016, the Boys submitted an application to the Architectural Review Committee ("ARC") of the Master Association seeking permission to install an access gate between their courtyard and Heron Road.[3]  The Boys stated that the proposed gate would "match the existing cedar gates on other townhomes."  Clerk's Papers (CP) at 181.  The Boys also stated that the gate would "provide for additional safety for children who might run onto Heron [Road]"—namely, their grandchildren.  CP at 181.  The ARC denied the Boys's application.

---

[2] Section 14.3 of the Declaration provides that:

> **Access And Use Easements Within The Town Home Lots.**  Each town home is located on a cluster of several Town Home Lots.  An easement is hereby reserved, conveyed and created upon, across and over each Town Home Lot within a cluster of Town Home Lots on which a town home is located, in favor of, and for the benefit of, each Town Home Lot within the cluster and the Owners, Residents, Occupants, tenants, guests and invitees thereof, for purposes of ingress, egress, utilities and use of driveways, walkways and common courtyards, if applicable,adjacent to each town home.

Clerk' Papers (CP) at 140.

[3] The ARC is established by section 11.2 of the Declaration and governs the preparation, submission, and determination of an application for architectural-related alterations or modifications.  Relevant here, section 11.3.1 of the Declaration provides that "no alteration or modification to an existing dwelling, building, structure, or other improvement within Ludlow Bay Village previously constructed by [the Master Association] or approved by the [ARC] shall be made unless complete plans and specifications therefor have been first submitted to and approved in writing by the [ARC]."  CP at 136.

On August 10, 2016, Albert Wagner, the President of the PLTHA, submitted an application to the ARC for permission to install a gate on the Boys's courtyard. The application stated that the proposed gate would be "identical to the gate at 30 Heron Road. This gate installation will complete the standardization of fencing and courtyard entries for building 400." CP at 149.

The Krells opposed adding a gate to the courtyard. James Krell stated that he and his wife, Marcia Krell, purchased 36 Heron Road because it did not have an access gate. Several other townhomes at the Village had gates, and the gates were a "deal-breaker" for them. CP at 288.

On September 8, 2016, the Krells submitted comments in response to the PLTHA's application for the gate. Specifically, the Krells contested the reasons that the PLTHA gave for installing a gate on the Boys's property. They also asserted that they have "chronic health issues that create a hardship in [their] daily lives." CP at 191. Specifically, they stated that a gate would cause them difficultly given their "limited dexterity and mobility, especially when carrying garbage, recycling, groceries, boat bags, collecting & delivering mail, home furnishings, etc." CP at 191.

On October 4, 2016, the ARC approved the PLTHA's application to install a gate on the Boys's property on four conditions. The four conditions provided that:

> 1. The gate will be similar to other gates in design and built to fit the site.
> 2. The gate will be installed so as not to block the internal courtyard sidewalk when opened[.]
> 3. The gate will have an [Americans with Disabilities Act] approved latch.
> 4. Landscaping that has to be replaced will be purchased by the owners of Town Home #34, the Boys, in consultation with the Town Home [Home Owner's Association] gardener. The Boys will also be responsible for making arrangements for the planting of any new landscaping materials.

CP at 151.

In November 2016, the Krells appealed the ARC's decision to the Master Association. The Master Association denied the Krells' appeal and concluded that the approval is consistent with the Declaration and village design standards. However, the Master Association directed the ARC to "review the gate installation and enforce the ADA compliance requirement of its initial approval." CP at 193. The Master Association later confirmed that the gate complied with the ADA.

### III. PROCEDURAL HISTORY

On June 21, 2018, the Krells filed a complaint in Jefferson County superior court against the Boys and the PLTHA for quiet title and declaratory judgment. First, the Krells alleged that "[a]n access easement exists across Boys parcel TH-17 for the benefit of [the] Krell parcel TH-18. Said easement was expressly conveyed under [section] 14.3 of the [Declaration]." CP at 4. Second, the Krells alleged that the "[i]nstallation of [the] gate has severally[sic] limited the scope and use of the easement and was done so over the objection of the dominant estate, Krell." CP at 4. The Krells requested an order quieting title to their easement against the PLTHA and the Boys, and a judgment declaring, among other things, an interpretation of the Declaration that would forever bar the PLTHA and the Boys from interfering in any way with the Krells' easement rights, and for an order directing removal of the gate.

With respect to the quiet title claim, both the Boys and the PLTHA admitted in their answers that the Krells had a valid access easement through the Boys's courtyard. With respect to the Krells' declaratory judgment action, the Boys denied whether the gate constituted an unreasonable interference with the Krells' easement. The PLTHA denied that the gate "'severally [sic] limited' the [Krells'] enjoyment and use of their easement." CP at 12.

6

On June 26, 2019, the PLTHA filed a motion for summary judgment. First, the PLTHA argued that the Krells' quiet title claim should be dismissed because there is no dispute regarding the existence of the Krells' easement under section 14.3 of the Declaration. Second, the PLTHA argued that the trial court should dismiss the Krells' declaratory judgment action because "the gate does not unreasonably interfere with the Krell[s]'s easement as a matter of law." CP at 38.

On June 27, 2019, the Boys filed a motion for summary judgment. The Boys argued that the trial court should dismiss them from action because there is "no evidence [they] recruited the PLTHA as their agent to install the gate." CP at 214.

The Krells argued that the trial court should deny both motions for summary judgment. Specifically, the Krells contended that the trial court should not dismiss the Boys because they are necessary parties to resolve their claims. With respect to the agency argument, the Krells contended that any failure to show an agency relationship did not warrant dismissal of the Boys. Second, the Krells argued that genuine issues of material fact remain as to whether the gate constitutes an unreasonable interference with their easement rights, which precluded summary judgment.

The trial court granted the PLTHA's motion for summary judgment in part. Specifically, the trial court dismissed the Krells' quiet title action because there was no dispute regarding existence of the Krells' access easement. The trial court denied the PLTHA's motion for summary judgment with respect to the declaratory judgment action (against the PLTHA) because genuine issues of material fact remain as to whether the gate constitutes an unreasonable interference with the Krells' easement rights.

The trial court granted the Boys's motion for summary judgment. Specifically, the trial court concluded that there was no evidence that the PLTHA was acting as the agents of the Boys in installing the gate for purposes of individual liability. Accordingly, the trial court dismissed the Boys from the action. The trial court did not address whether the Boys were necessary parties to resolve the Krells' remaining claims.

The Krells and the PLTHA both filed motions for reconsideration under CR 59. The trial court denied both motions.

The Boys moved for an award of attorney fees and costs in the amount of $29,093.94. They argued that attorney fees and costs should be awarded because they were the prevailing parties and because such an award was authorized by section 19.1 of the Declaration.[4]

On November 18, 2019, the trial court entered findings and judgment on the dismissed claims under CR 54(b), finding no just reason for delay, clearing the path for the Krells' appeal. The trial court also awarded the Boys their reasonable attorney fees and costs in the amount of $28,493.94. The Krells filed this interlocutory appeal.

---

[4] Section 19.1 of the Declaration provides that:

> In the event of any arbitration or litigation relating to the amendment, construction, enforcement, or interpretation of this Master Declaration, the prevailing party shall be entitled to recover from the nonprevailing party the prevailing party's reasonable attorneys' fees and costs, including fees and costs incurred on appeal.

CP at 144.

8

ANALYSIS[5, 6, 7]

I.    STANDARD OF REVIEW

We review an order granting summary judgment de novo.  *Pendergrast v. Matichuk*, 186 Wn.2d 556, 563, 379 P.3d 96 (2016).  Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  CR 56(c).  In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact.  *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017).  If the moving party meets this initial burden, the burden then shifts to the nonmoving party to make a sufficient showing that a genuine issue of material fact exists.  *Id.*

A material fact is one upon which the outcome of the litigation depends.  *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015).  We review facts and all reasonable inferences in the light most favorable to the non-moving party.  *Id*. at 370.  Summary judgment should be granted

---

[5] At length, the Boys argue that the trial court did not err in dismissing them from this action because there is no evidence of an agency relationship between the Boys and the PLTHA.  But because the Krells do not assign error to, nor substantively discuss, the trial court's conclusion regarding agency, we decline to address the issue.  *State v. Carey*, 15 Wn. App. 2d 817, 822, 478 P.3d 644 (2020).

[6] Throughout their briefing, the PLTHA makes legal arguments on behalf of the Boys.  "The doctrine of standing prohibits a litigant from asserting another's legal right[s]."  *West v. Thurston County*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008).  Accordingly, we decline to address the PLTHA's arguments made on behalf of the Boys.

[7] In their assignments of error, and throughout their briefing, the Krells seem to conflate the concepts of a quiet title action and a claim for unreasonable interference under the Uniform Declaratory Judgment Act.  Those are separate and distinct causes of action.  Therefore, the core of the Krells's substantive arguments appear to be (1) whether the trial court erred in dismissing their quiet title action, and (2) whether the trial court erred in dismissing the Boys from this action with respect to their declaratory judgment action.  Accordingly, we address the Krells' claims within their proper legal frameworks.

in favor of the moving party only if reasonable minds could reach but one conclusion from all the evidence. *Zonnebloem*, 200 Wn. App. at 183.

II.     QUIET TITLE ACTION

The Krells argue that the trial court erred in dismissing their quiet title claim. Specifically, the Krells contend that, because there is no dispute regarding the existence of their access easement, the trial court, instead of dismissing the cause of action, should have granted judgment in their favor.

The Boys and the PLTHA argue that the trial court did not err in dismissing the Krells' quiet title claim because no dispute exists regarding the existence of the Krells' access easement. We agree with the Boys and the PLTHA.

A.      Legal Principles

"A trial court has authority to quiet title in the dominant owner to an easement based on the instrument creating the easement." *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 819-20, 394 P.3d 446 (2017). Chapter 7.28 RCW governs quiet title actions. "An action to quiet title is equitable and designed to resolve competing claims of ownership." *Kobza v. Tripp*, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). "'An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination.'" *Byrd v. Pierce County*, 5 Wn. App. 2d 249, 266, 425 P.3d 948 (2018) (quoting

*Kobza*, 105 Wn. App. at 95). "Another and more colorful way of stating the same proposition is that 'the object of the statute is to authorize proceedings for the purpose of stopping the mouth of a person who has asserted or who is asserting a claim to the plaintiff's property.'" *Kobza*, 105 Wn. App. at 95 (quoting *McGuinness v. Hargiss*, 56 Wash. 162, 164, 105 P. 233 (1909), *overruled on other grounds by Rorvig v. Douglas*, 123 Wn.2d 854, 873 P.2d 492 (1994)).

In order to maintain a quiet title action, a plaintiff must first demonstrate a "valid subsisting interest in real property, and a right to the possession thereof." RCW 7.28.010. In demonstrating a valid subsisting interest, the plaintiff "shall set forth in his or her complaint the nature of his or her estate, claim, or title to the property." RCW 7.28.120. If a plaintiff can demonstrate a valid subsisting interest in the real property at issue, then they are permitted to maintain an action "*against the person claiming the title or some interest therein*" to quiet title in the property. RCW 7.28.010 (emphasis added); *See Grove v. Payne*, 47 Wn.2d 461, 464-65, 288 P.2d 242 (1955).

When multiple valid subsisting interests in the real property are demonstrated, the court must then determine which of the interests asserted are superior. RCW 7.28.120; *Grove*, 47 Wn.2d at 466. And the party with superior title, whether legal or equitable, shall prevail. RCW 7.28.120. Furthermore, "'[i]t is a long-standing principle that [a] plaintiff in an action to quiet title must succeed on the strength of his own title and not on the weakness of his adversary.'" *Byrd*, 5 Wn. App. 2d at 266 (internal quotation marks omitted) (quoting *Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 502, 309 P.3d 636 (2013)).

B.      The Trial Court Did Not Err In Dismissing The Quiet Title Cause Of Action.

Here, the Krells requested an order quieting title to the easement against the Boys and the PLTHA.  In their complaint, the Krells alleged that:

> An access easement exists across Boys parcel TH-17 for the benefit of [the] Krell parcel TH-18.  Said easement was expressly conveyed under [section] 14.3 of the [Declaration].  Installation of a gate has severally[sic] limited the scope and use of the easement and was done so over the objection of the dominant estate, Krell.

CP at 4.

Based on the above factual allegation, the Krells sought "an order that they have title in the access easement across the common courtyard for parcels TH-17 and TH-18 and that PLTHA is forever barred from claiming a right or interest in said easement, including the right to dictate the scope, use and objects within said easement."  CP at 5.  The Krells also sought "an order that they have title in the access easement across the common courtyard for parcels TH-17 and TH-18 and that Boys are forever barred from blocking said easement."  CP at 5.

In their answer, the Boys "admit[ted] an easement exists in accordance with [section] 14.3 of the applicable amended [Declaration]," but denied whether the gate constituted an unreasonable interference.  CP at 18.  Based on this language, the Boys do not dispute the existence of the Krells' easement.  But in their briefing before us, the Boys do dispute whether their omissions in opposing the PLTHA's installation of the gate unreasonably burdened the easement, which refers to the scope of the easement.

Likewise, the PLTHA did not dispute the existence of the Krells' access easement based on section 14.3 of the Declaration in their answer.  However, the PLTHA contends that the gate does not unreasonably burden the Krells' use and enjoyment of the easement.

12

A dispute over the reasonableness of installing a gate on an easement is a different legal question than a dispute between competing interests in property. As discussed above, "[a]n action to quiet title is equitable and *designed to resolve competing claims of ownership*." *Kobza*, 105 Wn. App. at 95 (emphasis added). Indeed, the quiet title statute confirms that competing ownership, or an asserted hostile interest in the property, is a prerequisite to maintaining a quiet title action. *See* RCW 7.28.010 ("Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought *against . . . the person claiming the title or some interest therein*."). (Emphasis added.)

Here, neither the Boys nor the PLTHA dispute that the Krells maintain an easement for the purposes of ingress and egress, as stated in section 14.3 of the Declaration. More importantly, neither the Boys nor the PLTHA are asserting any claim to the Krells' property interest in the easement. Because quiet title actions are designed to resolve competing interests in the property at issue, and because neither the Boys nor the PLTHA are disputing the existence of the Krells' easement over the Boys's courtyard, we hold that the trial court did not err in dismissing the quiet title action. Accordingly, the Krells' argument fails and we affirm.

III.    NECESSARY PARTY

The Krells appear to argue that the trial court erred in dismissing the Boys from this action because the Boys are necessary parties to resolve whether the gate constitutes an unreasonable interference with their easement rights.[8] We agree.

---

[8] The Krells contend that the Boys are necessary parties to their declaratory judgment action because "[a]ll authority requires the Court balance the equities between the servient and dominant estate when one of the parties [raises issue with the reasonableness of a gate on an easement.]" Br. of Appellant at 38. The Krells use the term "necessary party" regularly throughout their briefing.

A.     Legal Principles

"Under CR 19, a trial court must determine which parties are 'necessary' for a just adjudication." *Woodfield Neigh. Homeowner's Ass'n v. Graziano*, 154 Wn. App. 1, 3, 225 P.3d 246 (2009). A party is necessary if, "in the person's absence[,] complete relief cannot be accorded among those already parties." CR 19(a)(1); *Graziano*, 154 Wn. App. at 4. Alternatively, a party is necessary if

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
> (A) as a practical matter impair or impede the person's ability to protect that interest or
> (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest.

CR 19(a)(2); *Graziano*, 154 Wn. App. at 4.

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall* be joined as a party" if the person meets either CR 19(a)(1) or CR 19(a)(2). CR 19(a) (emphasis added); *Ahmad v. Town of Springdale*, 178 Wn. App. 333, 340-41, 314 P.3d 729 (2013). "Generally, a landowner is an indispensable party in a case that would affect the use of the landowner's property." *Ahmad*, 178 Wn. App. at 341; *See also Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 228, 901 P.2d 1060 (1995) ("All owners of an interest in property are presumably indispensable parties to an action involving that property.")

A judgment without joining a necessary party to the action is a procedural error. *See In re Dependency of L.S.*, 200 Wn. App. 680, 687, 402 P.3d 937 (2017).

---

Therefore, the Krells appear to argue that trial court erred in dismissing the Boys because the Boys are necessary parties under CR 19 in resolving their reasonable interference claim.

B.     The Boys Are Necessary Parties.

Here, the Boys are necessary parties to the Krells' declaratory judgment action under CR 19(a)(1).  In their complaint, the Krells requested "[an order] forever barr[ing the defendants] from blocking, damaging or in any way interfering with [their] easement rights and for an order directing the prompt removal of the gate."  CP at 6.  Viewing the facts and inferences in light most favorable to the Krells, if they were to succeed on their declaratory judgment action, then they would be entitled to a judgment ordering removal of the gate.  As discussed above, it is not disputed that the gate is located on the Boys's property.  But if the Boys are no longer parties to the action, then the court would lack the authority to order the Boys to remove the gate.  Because complete relief could not be accorded to the Krells in the Boys's absence, we conclude that they are necessary parties to the declaratory judgment action.  CR 19(a)(1).

The Boys are also necessary parties under CR 19(a)(2).  As discussed above, the Boys are the owners of parcel TH-17, which is where the gate and the Krells' easement is located—i.e. the subject of the action.  CR 19(a)(2).  Additionally, the Boys are "so situated that the disposition of the [Krells' declaratory judgment action] in [the Boys's] absence may [] as a practical matter impair or impede [their] ability to protect [their property rights]."  CR 19(a)(2)(A).  As discussed above, the Krells requested a declaratory judgment against the Boys which would "forever bar [them] from blocking, damaging *or in any way interfering* with [the Krells'] easement rights and for an order directing the prompt removal of the gate."  CP at 6 (emphasis added).  Based on this language, the Krells' requested relief could affect how the Boys use their courtyard in the future.  Because the disposition of the Krells' declaratory judgment action could affect, i.e. impair or impede, how the Boys use their property based on the relief requested in the complaint, we conclude the Boys are necessary parties to this action.  CR 19(a)(2); *Ahmad*, 178 Wn. App. at 341.

In sum, because necessary parties "shall" be joined to the action, and because landowners are "[g]enerally . . . an indispensable party in a case that would affect the use of the landowner's property," we hold that the trial court erred in dismissing the Boys as they are necessary parties to resolve the Krells' declaratory judgment action. CR 19(a); *Ahmad*, 178 Wn. App. at 341. Accordingly, we reverse the trial court's order dismissing the Boys and remand for further proceedings.

IV.   DECLARATORY JUDGMENT AND UNREASONABLE INTERFERENCE

Next, the Krells argue that the trial court erred in dismissing their declaratory judgment action against the Boys. Specifically, the Krells contend that our decision in *Zonnebloem*, 200 Wn. App. 178, imposes a duty on the Boys to take reasonable, affirmative steps to facilitate their use of the easement. And whether the Boys breached that duty creates a genuine issue of material fact, which precluded the trial court from dismissing the Boys on summary judgment.

The Boys contend that the trial court did not err in dismissing the declaratory judgment action against them because there is no justiciable controversy with respect to the gate. However, the Boys go on to contest whether they owed a duty to take reasonable, affirmative steps to facilitate the use of the Krells' easement—namely, to oppose the PLTHA's installation of the gate. We agree with the Krells.

A.   Declaratory Judgment

"Justiciability is a threshold requirement that must be satisfied before we may address [the Krells'] claims." *Eyman v. Ferguson*, 7 Wn. App. 2d 312, 319, 433 P.3d 863 (2019). Justiciability is reviewed de novo. *Id*.

The Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, provides that "[a] person interested under . . . writings constituting a contract . . . may have determined any question

of construction or validity arising under the instrument . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. The UDJA is "remedial" in nature. RCW 7.24.120. Its purpose is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and courts should liberally construe and administer it. *Id*.

"[A] party must satisfy certain threshold requirements before obtaining declaratory relief." *Bloome v. Haverly*, 154 Wn. App. 129, 140, 225 P.3d 330 (2010). One such requirement "is that a justiciable controversy must exist between the parties." *Id*. A justiciable controversy is:

> (1) . . .an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) involving interests that are direct and substantial, rather than potential, theoretical, abstract, or academic, and (4) of which a judicial determination will be final and conclusive.

*Alim v. City of Seattle*, 14 Wn. App. 2d 838, 847, 474 P.3d 589 (2020). "Each of these four requirements must be met. Otherwise, the court 'steps into the prohibited area of advisory opinions.'" *Eyman*, 7 Wn. App. 2d at 320 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

In this case, there is a clear dispute and opposing interests as to whether the Boys owed the Krells an affirmative duty to facilitate their easement rights under our decision in *Zonnebloem*, 200 Wn. App. 178. *See Alim*, 14 Wn. App.2d at 847. Additionally, the issue is direct and substantial because it pertains to the legal obligations and possible liabilities of the servient estate owner, the Boys. *Alim*, 14 Wn. App.2d at 847. And lastly, a judicial determination would be final and conclusive as to whether the Boys owed and breached such a duty, which could constitute an unreasonable interference. *Id*.

17

Because all four prongs of the justiciability test are met, we conclude that the trial court erred in dismissing the declaratory judgment action against the Boys based on non-justiciability of the issue. *Eyman*, 7 Wn. App. 2d at 320.

B.     Unreasonable Interference

An "easement" is a nonpossessory right to use the land of another. *Maier v. Giske*, 154 Wn. App. 6, 15, 223 P.3d 1265 (2010). The person who benefits from an easement, known as the easement holder or dominant estate owner, has a property interest in the land subject to the easement, known as the servient estate. *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 654-55, 145 P.3d 411 (2006). The easement represents a burden on the servient estate. *Id.* at 655.

In general, the owner of a servient estate may use his or her property in any reasonable manner that does not interfere with the easement holder's use of the easement. *Zonnebloem*, 200 Wn. App. at 184. In addition, a servient estate owner may engage in reasonable conduct that affects access to the easement as long as that conduct does not unreasonably interfere with the easement holder's use. *Zonnebloem*, 200 Wn. App. at 184; *See Nw. Props. Brokers Network, Inc. v. Early Dawn Estates Homeowner's Ass'n*, 173 Wn. App. 778, 792-93, 295 P.3d 314 (2013) (addressing the installation of a gate that restricted access to an easement).

The reasonableness of a restraint depends on a balancing of the necessity of the restraint for the protection of the servient estate against the degree of interference with the easement holder's use. *Zonnebloem*, 200 Wn. App. at 184. Specifically,

> when determining whether a gate or its ease of use unreasonably interferes with easement rights, we consider (1) the increased burden on the servient estate, (2) whether the restrictions on the gate are reasonably necessary for protection, and (3) the degree to which the gate interferes with the dominant owner's use.

*Nw. Props.*, 173 Wn. App. at 793

18

In *Zonnebloem*, we recognized "there may be circumstances in which a servient estate owner can be liable for wrongful interference with an easement for failing to take a reasonable affirmative action to facilitate the easement holder's use of the easement." 200 Wn. App. at 186.

Subsumed in the Krells' argument that the Boys omitted challenging the installation of the gate by the PLTHA is the notion that the Boys had such a duty. The Krells are correct. There is also an issue of material fact precluding summary judgment on the issue of unreasonable burden.

Here, as the servient estate, the Boys have a duty to facilitate the Krells' use the easement; that is, to facilitate their ingress and egress through the courtyard. However, whether or not the Boys's omissions in allowing the installation of the gate by the PLTHA constitutes a breach of that duty remains a question of fact to be resolved in the trial court. *See Id*. at 186 (discussing a California case which stated that "whether the servient estate owner's particular conduct constitutes an unreasonable interference with the easement is a question of fact.").

Because genuine issues of material fact remain as to whether the Boys's omissions to oppose the gate has created an unreasonable interference with the Krells' easement rights, we reverse and remand the trial court's order granting summary judgment, which dismissed the declaratory judgment action against the Boys.

V.      ATTORNEY FEES BELOW

The Krells argue that the trial court erred in awarding attorney fees and costs to the Boys. We agree.

Washington courts follow the "American Rule," where each party pays its own attorney fees unless an award is authorized by contract, statute, or a recognized ground in equity. *Dave Johnson Ins. Inc. v. Wright,* 167 Wn. App. 758, 783, 275 P.3d 339 (2012). "We review whether there is a legal basis for an award of attorney fees de novo." *Allen v. Dan & Bill's RV Park*, 6 Wn. App. 2d 349, 372, 428 P.3d 376 (2018).

Section 19.1 of the Declaration allows the trial court to award the prevailing party reasonable attorney fees and costs for actions "relating to the amendment, construction, enforcement, or interpretation" of its provisions. CP at 144. A prevailing party is any party that receives a final judgment in their favor. *In re Estate of Carter*, 11 Wn. App. 2d 573, 589 n.7, 455 P.3d 197 (2019). If neither party prevails entirely, "then the determination of who is a prevailing party depends upon who is the substantially prevailing party." *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). Determining who the substantially prevailing party is depends on the relief granted. *Dave Johnson Ins.*, 167 Wn. App. at 783. However, if both parties are awarded "some measure of relief and there is no singularly prevailing party, neither party may be entitled to attorney fees" and both parties will pay their own costs and fees. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996).

Here, the Boys received a final judgment in their favor on the quiet title claim. But because we reverse the trial court's order dismissing the declaratory judgment claim against the Boys, they are no longer prevailing parties on that issue. Because both parties are awarded relief, there is no singularly prevailing party. *See Id.* Therefore, neither the Krells nor the Boys were entitled to attorney fees and costs below. *See Id.* Accordingly, we reverse the trial court's award of attorney fees and costs.

## VI.    ATTORNEY FEES ON APPEAL

The Krells request attorney fees on appeal under RAP 18.1(a) and section 19.1 of the Declaration.  The Boys also request attorney fees on appeal under RAP 18.1(a) and section 19.1 of the Declaration.  We deny both requests.

RAP 18.1(a) allows us to award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."  As discussed above, section 19.1 of the Declaration permits us to award attorney fees on appeal to the prevailing party if the issues litigated relate to the amendment, construction, enforcement of interpretation of its provisions.  A prevailing party is any party that receives a final judgment in their favor.  *Carter*, 11 Wn. App. 2d at 589 n.7.  However, if both parties are awarded "some measure of relief and there is no singularly prevailing party, neither party may be entitled to attorney fees" and both parties will pay their own costs and fees.  *Phillips*, 81 Wn. App. at 702.

Here, as discussed above, the Boys prevailed on the quiet title claim, but not the declaratory judgment claim.  Because both parties are awarded some relief, neither are entitled to attorney fees on appeal.  *Id.*  Accordingly, we deny both requests on appeal.

### CONCLUSION

We affirm the trial court's dismissal of the Krells' quiet title action; reverse the trial court's dismissal of the Boys as parties; reverse the trial court's dismissal of the Boys as to the Krells' declaratory judgment action; reverse trial court's award of attorney fees and costs to the Boys; deny both parties attorney fees on appeal; and remand for further proceedings.

21

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Price, J.